UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN HAWKS,

                              Plaintiff,


                                                    **Hon. Hugh B. Scott**

            v.

                                                    05CV156A

                                                    **Report
                                                    &
COMMISSIONER ROCCO DIINA, et al.,                   Recommendation**

                              Defendants.


This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)©

(Docket No. 9, Aug. 26, 2005).   The instant matters before the Court are defendants' motions

(Docket Nos. 34, 50[1]) for summary judgment.   Originally, responses to this motion were due by

October 20, 2006, and reply by October 30, 2006 (Docket No. 41), but plaintiff moved for an

extension of time to respond (Docket No. 46), which was granted and the response was due by

November 30, 2006, with reply due by December 8, 2006 (Docket No. 47).   The motion then was

---

[1]In support of their motions, defendants filed their attorney's affidavit with exhibits,
Docket No. 35, the exhibits including affidavits from Buffalo Police Department Lieutenant Paul
Delano, Ex. B, and Buffalo Police Department Lieutenant Amy Marracino, Ex. C; memorandum
of law, Docket No. 36; statement of undisputed facts, Docket No. 37; a replacement affidavit of
Marracino, Docket No. 40, a further motion as to defendants Diina, Teague, Maroney, and
"others," Docket No. 50, with attorney's affirmation and exhibits, Docket No. 51.   That latter
attorney's affirmation includes legal argument; no separate memorandum of law was filed for the
second motion.
    Plaintiff has not filed anything in response to these motions.

deemed submitted, without oral argument, on December 8, 2006 (Docket No. 47), but that

submission date was extended to February 13, 2007, due to the issue whether defendants

intended to move for summary judgment against all claims raised against all defendants (Docket

No. 49).  Defendants were to indicate their intention regarding some of the defendants not named

in their initial motion by January 16, 2007, and plaintiff was given until February 13, 2007, to

respond to these motions and the motion finally was deemed submitted on that date (id.).

Defendants then filed their second motion for summary judgment as to defendants Diina, Teague,

Maroney, and "others" (Docket No. 50).

## BACKGROUND

Plaintiff, an inmate proceeding pro se, sued defendants (former City of Buffalo Police

Commissioner Rocco Diina and various named police officers) for allegedly using excessive

force (in violation of his Fourth, Eighth, and Fourteenth Amendment rights) during his arrest on

August 5, 2003, when he was shot twice during that arrest (see Docket No. 1, Compl.).

Defendants construe the Complaint as alleging that the use of force was unreasonable and in

violation of his constitutional rights and that he was denied medical treatment by defendant

officers (Docket No. 36, Defs. Memo. of Law at 2).  The Complaint alleges in count one an

excessive force claim, and presumably municipal liability for the policy of allowing such force to

be used (see Docket No. 1, Compl. ¶ 7).  Count two alleges abuse of authority and excessive

force by defendant police Lieutenants Paul Delano and Amy Marracino, asserting that they used

excessive force due to a lack of training following unspecified prior incidents of misconduct,

because they were not suspended for prior incidents, and the absence of an assigned duty patrol

supervisor (id.. ¶¶ 8-9).  Count three alleges that defendants delayed in providing medical care to

2

plaintiff (id. ¶ 10).  Plaintiff alleges that the delay in issuance of care was due to the policies or

lack thereof of defendants (id.).

Defendants Delano and Marracino responded to the call that lead to the arrest and the

incidents alleged in this action.  The Complaint does not clearly state the roles of defendant

detectives Maroney or Teague.

The Court granted plaintiff's motion to proceed with in forma pauperis status and

amending the caption to correct Commissioner Diina's name and title (Docket No. 3, Order, at 1

n.1; see Docket No. 2).  Defendants jointly answered (Docket No. 4), the Court issued a

Scheduling Order (Docket No. 11; see also Docket Nos. 28, 29 (extending dispositive motions to

September 15, 2006)), and the parties exchanged discovery demands (see, e.g., Docket Nos. 5-7;

cf. Docket Nos. 26 (defendants' motion to compel), 28 (Order denying, in part, motion to

compel)).

Meanwhile, plaintiff moved to compel production from non-parties, the Erie County

District Attorney and Emily Trott, Esq., plaintiff's former criminal defense counsel (Docket

No. 19), seeking from them eighteen categories of documents from his criminal trial.  Plaintiff's

motion was denied (Docket No. 20).  Plaintiff then served subpoenas upon these non-parties (see

Docket No. 30) and the District Attorney moved to quash his subpoena (Docket No. 31).  That

motion to quash was denied in part, granted in part, limiting production of certain items from

plaintiff's criminal trial that may be relevant to this action (Docket No. 43).  Plaintiff next moved

for an extension of time to respond to the now pending defense summary judgment motion, in

part, because he was awaiting production of the documents from the District Attorney and his

former criminal defense lawyer (Docket No. 46).  While separately granting the extension of time

to respond (Docket No. 47), the Court denied plaintiff's request to the District Attorney to release grand jury testimony and his application to his former defense counsel was deemed moot (Docket No. 48).

*Defense First Summary Judgment Motion (Docket No. 34)*

Defendants Delano and Marracino argue that plaintiff was shot during an altercation with defendant Lieutenant Paul Delano while Delano was attempting to arrest plaintiff. Delano states in his affidavit that he chased plaintiff and plaintiff refused commands to stop. In a driveway, Delano pointed his gun at plaintiff and ordered him to not move. Plaintiff instead lunged at Delano with a metal pipe, striking Delano with it. Delano then shot plaintiff once in the mid section. (Docket No. 35, Defs. Atty. Aff. Ex. B, Delano Aff. ¶¶ 4-15.) Plaintiff then dropped the pipe and grabbed for Delano's weapon, the two struggled for the gun and Delano fired at the suspect again (Docket No. 37, Defs. Statement ¶ 11; Docket No. 40, Marracino Aff. ¶ 19; Docket No. 35, Defs. Atty. Aff. Ex. B, Delano Aff. ¶ 16). Plaintiff continued to struggle while Delano tried to fire a third shot but his weapon jammed, and plaintiff was wrestled to ground and handcuffed in the front (Docket No. 37, Defs. Statement ¶¶ 12-13). Delano later stated that he fired shots at plaintiff because he believed that plaintiff was trying to take Delano's gun away from him (Docket No. 35, Defs. Atty. Aff. Ex. B, Delano Aff. ¶ 34).

Plaintiff had lost a large amount of blood from his wounds (id.). Defendant Marracino reported the initial pursuit of plaintiff on 5:59:33 pm and radioed for an ambulance at 6:00:36 pm (Docket No. 37, Defs. Statement ¶ 16; Docket No. 35, Defs. Atty. Aff. Ex. D, service inquiry response, Aug. 5, 2003). Delano also states that he radioed for an ambulance and that he or Marracino requested that they hurry up (Docket No. 35, Defs. Atty. Aff. Ex. B, Delano Aff.

¶¶ 24, 25).  Marracino states that, after she called for the ambulance, she balled up the plaintiff's

shirt and held it over his wound to slow or stop the bleeding (Docket No. 40, Marracino Aff.

¶ 30), and she asked campus safety officers from Canisius College arriving at the scene whether

they had first aid kits and one of them returned with gauze (id. ¶¶ 31, 32).  At 6:13:12 pm,

Marracino again radioed for the ambulance (id. ¶ 34; Docket No. 35, Defs. Atty. Aff. Ex. D;

Docket No. 37, Defs. Statement ¶ 16).  Other officers transported plaintiff to Erie County

Medical Center on 6:29:36 pm, according to police records (Docket No. 35, Defs. Atty. Aff.

Ex. D) rather than wait any longer for an ambulance (see Docket No. 36, Defs. Memo. at 8).

Defendants conclude that the force used was not constitutionally excessive under the

circumstances, and that the defendants are entitled to qualified immunity (Docket No. 36, Defs.

Memo. at 2-7).  They point to New York Penal Law §§ 35.10(1) (force necessary to effect the

arrest), 35.30 (use of deadly force in self-defense) as justification for the level of force used to

subdue plaintiff (id. at 3, 4).  They also argue that they did not deny plaintiff medical treatment

(id. at 7-9).

Preoccupied with trying to obtain documents from non-parties, plaintiff did not file a

response to this motion, or file an affidavit indicating either his inability to respond in general or

tying that inability to the lack of production from these non-parties, cf. Fed. R. Civ. P. 56(f).

*Defense Second Summary Judgment Motion (Docket No. 50)*

The Court ordered defendants to address whether they also intended to move for

summary judgment against claims made against remaining defendants Diina, Maroney, and

Teague (Docket No. 49), with that briefing due by January 16, 2007, and plaintiff's response due

by February 13, 2007 (id.).  That portion of the motion, and the entire pending motion were then deemed submitted as of February 13, 2007 (id.).

Defendants then filed their second motion for summary judgment, to supplement their first motion, and to include defendants Diina, Maroney, Teague, and "others" (Docket No. 50; Docket No. 51, Defs. Atty. Affirm. ¶ 2).  Here, defendants attached a copy of plaintiff's statement from the next day, August 6, 2003, that he gave in the lockup at the Erie County Medical Center describing the incident (signed by plaintiff as Keith Gettys, but noted therein as an alias) (Docket No. 51, Defs. Atty. Affirm. ¶¶ 3, 5, Ex. A).  Defendants argue that plaintiff's (unsworn) statement does not contradict defendants' version of the incidents during plaintiff's arrest; he stated that he started to run, the police chased him and he swung the pipe at one officer and later wrestled for the officer's gun (id. ¶ 5, Ex. A).  After the gun went off two times, plaintiff stated that he waited for fifteen to twenty minutes for an ambulance to arrive.  Plaintiff's statement then describes his ambulance and hospital treatment.  (Id. Ex. A.)  Defendants conclude that the use of force described in plaintiff's statement (and defendants in their motions) was not excessive and no Fourth Amendment violation occurred (id. ¶ 6).  Absent a constitutional violation, defendants conclude that there can be no supervisory liability for the defendant Commissioner Diina or detectives Maroney or Teague (id. ¶ 7).  Further, defendant detectives had no supervisory capacity over the arresting lieutenant defendants (id. ¶¶ 8, 15, Ex. B, Buffalo Police Department Manual of Procedures excerpt description of duties of detectives).  Defendants argue that they are protected by qualified immunity because the policy calling for the use of deadly force is protected by qualified immunity (id. ¶ 9) and plaintiff made only a conclusory allegation that should be dismissed (id. ¶¶ 9-11).  Absent proof of

inappropriate behavior by Delano and Marracino, Commissioner Diina had no reason to believe

that the lieutenants would behave inappropriately and fail to take action, hence defendants argue

no supervisory liability (id. ¶¶ 18, 17, 19).

Defendants argue that the use of force here was in self-defense and hence appropriate

under the circumstances (id. ¶ 22).

## DISCUSSION

I.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56©.   The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres &

Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party

must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986), the party against whom summary judgment is sought, however, "must do more

than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (emphasis in original removed); <u>McCarthy v. American Intern. Group, Inc.</u>, 283 F.3d 121, 124 (2d Cir. 2002); <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002).

The Local Civil Rules of this Court require that movant and opponent each submit statements of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56.1(a).  Movant is to submit facts in which there is no genuine issue, <u>id.</u>, while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, <u>id.</u> R. 56.1(b).  "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority, <u>id.</u> R. 56.1(d).  All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, <u>id.</u> R. 56.1©.  The purpose of these statements, and the appendix of supporting evidence, <u>id.</u> R. 56.1(d), is to summarize and highlight for the Court the material factual issues, the authority in the evidentiary record for the purported facts, and whether the parties believe they are in dispute.  These rules apply to plaintiff proceeding <u>pro se</u>, who is obliged under these Local Rules "to become familiar with, to follow, and to comply" with them and the Federal Rules, W.D.N.Y. Loc. Civ. R. 5.2(e).

II.      Qualified Immunity and Use of Force

Defendants argue that it was objectively reasonable for them to believe that they were acting in a fashion that did not clearly violate an established federally protected right (Docket No. 36, Defs. Memo. at 2), <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (citing <u>Robison v.</u>

8

Via, 821 F.2d 913 (2d Cir. 1987).  They cite to this Court's decision in Estate of Jackson v. City of Rochester, 705 F. Supp. 779, 783 (W.D.N.Y. 1989) (Larimer, J.), as holding that a police officer shooting and killing a knife-wielding suspect was objectively reasonable when the officers were defending themselves against plaintiff's life-threatening actions (id. at 5).  In their second motion, they cite a similar situation in Salim v. Proulx, 93 F.3d 86 (2d Cir. 1996), where the Circuit Court held that the defendant officer was entitled to summary judgment on qualified immunity grounds because plaintiff's own version of the incident described a struggle for the officer's weapon that went off and established the reasonable response by the officers (Docket No. 51, Defs. Atty. Affirm. ¶¶ 23, 25).  As for the Commissioner Diina, defendants argue that he also is entitled to qualified immunity.  As for the detective defendants, defendants contend that they had no supervisory or other role in this incident.  (Id. ¶¶ 9-14, 16-20, 8, 15.)

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  As required by the Saucier Court, this Court first considers the constitutional question, then will consider the qualified immunity question, id.  Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity."

Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Here, plaintiff has not filed a counterstatement of facts or a Rule 56(f) affidavit explaining why he could not respond to this motion (despite receiving an extension of the response deadline).  Thus, under this Court's local rule defendants' Statement is deemed admitted, W.D.N.Y. Loc. Civ. R. 56.1©.  That Statement presents the defendant police officers facing plaintiff attacking one of the defendant officers, bent upon taking one of the officer's sidearms.  Further, defendants produced plaintiff's contemporaneous (although unsworn) statement, which is consistent with the defense version of events.  The circumstances are similar to those in Estate of Jackson where this Court held that the defendant police officer did not use excessive force in protecting himself, 705 F. Supp. at 788, and that the officer was entitled to qualified immunity as a matter of law, id. at 785.  This case also is similar to Salim, where the plaintiff and the officer wrestled for control of the officer's weapon and it went off.  The Second Circuit there held that the officer was entitled to qualified immunity and dismissal of the action because "no rational jury could find that Officer Proulx's decision to use deadly force 'was so flawed that no reasonable officer would have made a similar choice,'" Salim, supra, 93 F.3d at 92 (quoting Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995)).  Here, Delano faced a life threatening situation; plaintiff was attempting to reach his weapon, as plaintiff states in his unsworn statement.  Thus, defendants motions for summary judgment should be **granted** on plaintiff's excessive force claim.

III.     Alleged Denial of Medical Treatment

Plaintiff alleges violation of his rights under the Fourth, Eighth and Fourteenth Amendments, including his claim of deprivation of medical treatment.  According to plaintiff's August 6, 2003, statement, after he was shot, plaintiff laid on the ground for fifteen to twenty minutes before an ambulance came (Docket No. 51, Defs. Atty. Affirm. Ex. A).  Defendants, meanwhile, tried to obtain an ambulance and Marracino applied first aid to stop plaintiff's bleeding (Docket No. 37, Defs. Statement ¶ 16; Docket No. 40, Marracino Aff. ¶¶ 30, 31, 32, 34; Docket No. 35, Defs. Atty. Aff. Ex. B, Delano Aff. ¶¶ 24, 25) and other officers then transported him to a hospital after waiting for an ambulance (Docket No. 35, Defs. Atty. Aff. Ex. D).  The issue thus is whether that delay constitutes a violation of plaintiff's rights.

A.     Applicable Constitutional Standard

Courts in this Circuit are split on the constitutional basis for analyzing a claim like this for deprivation of medical treatment to an arrestee by the law enforcement agency, see Quint v. Donaj, No. 3:02CV2053, 2006 U.S. Dist. LEXIS 37698, at *16-17 (D. Conn. Jan. 20, 2006) (noting the split); Freece v. Young, 756 F. Supp. 699, 701 (W.D.N.Y. 1991) (Fisher, Mag. J.). Some courts (including this one, Mowry v. Noone, No. 02CV6357, 2004 U.S. Dist. LEXIS 28225, at *12-13 (W.D.N.Y. Sept. 30, 2004) (Feldman, Mag. J.)[2]) apply the Due Process Clause of the Fourteenth Amendment, a standard similar to the Eighth Amendment deliberate indifference standard.  Other courts (again, including this one, Freece, supra, 756 F. Supp. 699 (W.D.N.Y. 1991) (Fisher, Mag. J.)) apply the Fourth Amendment, see Quint, supra, 2006 U.S. Dist. LEXIS 37698, at *18 (adopting Freece's reasoning and applying the Fourth Amendment),

_____

[2]Magistrate Judge Feldman did not note Freece in deciding Mowry.

11

testing the objective reasonableness of plaintiff's treatment within the totality of the arrest and seizure.

        1.       Eighth Amendment

Plaintiff argues an Eighth Amendment violation in the delay in his treatment.  Under the Eighth Amendment, in order to state a claim for inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain.") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.  1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The United States District Court for the Northern District of New York, in LaGrange, applied the Eighth Amendment deliberate indifference standard to plaintiff's claim that defendant police officers deprived him of medical attention and treatment during his arrest, 142 F. Supp. 2d at 293, in a civil rights action in which plaintiff asserted claims under the Eighth and Fourteenth Amendments (among other rights asserted), id. at 289.  The court held that there were issues of material fact whether plaintiff was in medical distress to preclude summary judgment, id. at 293.

"To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104).  Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).  This claim has two elements, an objective component, that the deprivation must be

sufficiently serious; and a subjective component, that the defendant official must act with

sufficiently culpable state of mind.  Hathaway, supra, 37 F.3d at 66.  "Sufficiently serious" for

the objective component contemplates "a condition of urgency, one that may produce death,

degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J.,

dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that defendants

wantonly intended to cause him to suffer.  Wilson v. Seiter, supra, 501 U.S. at 302.

It is clear, however, that the Eighth Amendment deliberate indifference standard (while

setting a standard for medical treatment for inmates), does not form the constitutional basis for a

pre-conviction arrestee, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983);

but cf. LaGrange, supra, 142 F. Supp. 2d at 293 (not discussing City of Revere).  Since plaintiff

was not convicted of an offense when he sought medical treatment from the police, he was not

being punished and thus his claim is not governed by the Eighth Amendment's ban against cruel

and unusual punishment.  See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979); Weyant v. Okst,

101 F.3d 845, 856 (2d Cir. 1996).

        2.        Fourteenth Amendment Due Process or Fourth Amendment Seizure

When applied to pretrial detainees, the Due Process Clause of the Fourteenth Amendment

applies a standard similar to the Eighth Amendment cruel and unusual punishment standard.  See

Weyant, supra, 101 F.3d at 856; Bourdon v. Roney, No. 99CV769, 2003 U.S. Dist. LEXIS 3234,

at *28-29, *31 (N.D.N.Y. Mar. 6, 2003) (Sharpe, Mag. J.) (recommending granting defendants

summary judgment dismissing plaintiff's condition of confinement claim).  The Due Process

Clause requires a municipality to provide medical care to arrestees who were injured during their

apprehension, with the due process right as great as the Eighth Amendment protections afforded

to convicted prisoners, <u>Revere</u>, <u>supra</u>, 463 U.S. at 244; <u>Wolfish</u>, <u>supra</u>, 441 U.S. at 535, n. 16,

545.  That constitutional obligation is met by seeing that the arrestee is taken "promptly to a

hospital that provided the treatment necessary for his injury," <u>Revere</u>, <u>supra</u>, 463 U.S. at 245.

The <u>Revere</u> Court, however, did not decide the extent of this constitutional obligation, <u>id.</u> at 244,

that is, when does a delay in rendering medical care become a due process violation.

Under the Fourth Amendment analysis, however, "denial of medical care is evaluated by

reference to the totality of the circumstances surrounding the arrest and is considered one

component of the objective reasonableness standard applied to any seizure," <u>Quint</u>, <u>supra</u>,

2006 U.S. Dist. LEXIS 37698, at *18, citing <u>Freece</u>, <u>supra</u>, 756 F. Supp. at 701.  This Court, in

<u>Freece</u>, <u>supra</u>, 756 F. Supp. 699, held a claim of deprived medical care for an arrestee during the

period of time between the plaintiff's arrest and his initial appearance was governed by the

Fourth Amendment and its objective reasonableness standard, <u>id.</u> at 703-04, 701, 703 (citing

<u>Powell v. Gardner</u>, 891 F.2d 1039, 1044 (2d Cir. 1989)).  Applying the objective reasonableness

there, Magistrate Judge Fisher found that there was no manifestation of a medical necessity to

treat plaintiff, <u>id.</u> at 704.

Defendants, apparently applying the Eighth Amendment/Due Process Clause deliberate

indifference standard, argue that plaintiff has not met either the objective or subjective prong for

deliberate indifference (Docket No. 36, Defs. Memo. at 7).  Here, defendants called for an

ambulance minutes after the shooting.  Defendant Marracino attempted to stop plaintiff's

bleeding and sought a first aid kit from other police officers to render first aid to plaintiff.  She

repeated her call for an ambulance to hurry about fifteen minutes later.  Other officers transported

plaintiff to a hospital about fifteen minutes later.

14

Regardless of whether the Fourth Amendment or Fourteenth Amendment Due Process Clause standards apply, plaintiff fails to state a claim for deprivation of medical treatment.  As for the Fourth Amendment standard and looking at the totality of the arrest, although plaintiff alleges "serious pain and internal injures" as a result the alleged "close to an hour" delay in being placed in a hospital while waiting to be transported (Docket No. 1, Compl. ¶ 10), the delay in obtaining this treatment while being administered first aid was objectively reasonable.  The officers were attempting to obtain an ambulance, calling multiple times to obtain one, while administering first aid.

Alternatively, under the Due Process Clause and even giving the liberal construction to the pro se Complaint required by Haines v. Kerner, 404 U.S. 519 (1972) (per curiam), plaintiff only generally alleges the harm he suffered from the delay in treatment, be it twenty minutes (from plaintiff's contemporaneous statement), thirty minutes (from defendants' 911 log) or the "close to an hour" alleged in the Complaint, as "serious pain and internal injuries" (Docket No. 1, Compl. ¶ 10).  He does not allege any temporary or permanent damage that resulted from the delay.  In fact, his statement states that he was placed in an ambulance and given an intravenous solution and transported to the hospital (Docket No. 51, Defs. Atty. Affirm. Ex. A). Absent the Supreme Court or the Second Circuit defining what constitutes "prompt" transport of an injured arrestee to a hospital for due process purposes, cf. Revere, supra, 463 U.S. at 245, the delay alleged in moving papers of twenty to thirty minutes (or even the "close to an hour" alleged in the pleadings) and the absence of alleged injury resulting from that delay was sufficiently prompt to make defendants not liable.  Therefore, defendants Delano and Marracino's motion for summary judgment (Docket No. 34) should be **granted**.

15

IV.     Claims Against Former Commissioner Diina and Detectives Maroney and Teague

        The Complaint alleges against defendants Diina, Maroney, and Teague that they (with

defendants Delano and Marracino) created a directive, policy, procedure (or the lack thereof) that

lead to the use of force against plaintiff (Docket No. 1, Compl. ¶ 7).  Plaintiff also alleges that the

delay in furnishing him with medical care following the shooting was due to the policies (or lack

thereof) of defendants (id. ¶ 10).

        Defendants in their initial motion for summary judgment (Docket Nos. 34-37, 40)

focused upon the allegations made against Delano and Marracino and did not discuss the claims

against the other defendants.  Thus, the Court required defendants to state whether they intended

to move to dismiss these claims as well and to brief the arguments for such a dismissal (Docket

No. 49).  Defendants supplemented their motion to address these claims (Docket No. 50).

        A.      Personal Involvement

        Plaintiff fails to allege the personal involvement of these defendants.  The Complaint

merely alleges their roles as policy makers generally without specifying what it might be.  While

the former police commissioner was a policy maker, defendants Teague and Maroney require

some allegation of their involvement in this case.  In the second motion, defendants deny that

Teague and Maroney, as detectives, had any supervisory role over Lieutenants Delano and

Marracino (Docket No. 51, Defs. Atty. Affirm. ¶¶ 8, 15, Ex. B (Buffalo Police Department policy

statement 2.0 "Detective Duty").  They argue that Teague and Maroney's personal involvement

needed to be alleged, and that they participated in the challenged conduct.  Further, defendants,

after learning of the conduct, failed to remedy the wrong and that they had created a policy the

fostered the conduct.  The detectives have had to have been grossly negligent or deliberately

indifferent to the rights of others by failing to act on information regarding their subordinates, Colon v. Coughlin, 58 F.2d 865, 873 (2d Cir. 1995).

Here, the detectives were not supervisors of Delano or Marracino to be responsible for their conduct. Plaintiff has not alleged any other personal involvement by these detectives and claims against them should be **dismissed**.

B.      Municipal Liability

Municipal liability, including liability for a municipality's supervisory officials, must be based on enforcement of a municipal policy or custom and not upon  respondeat superior liability, see Monell, 436 U.S. 658 (1978).  Plaintiff only generally alleges the existence of policies (or their absence) that lead to (a) the excessive use of force against him and (b) the delay in plaintiff receiving medical treatment.  In their supplementing motion (Docket No. 50), defendants argue that, under the policy involved, officers may use deadly force in self-defense or in effectuating an arrest, and that this policy was lawful and that all defendants (especially Diina) were protected by qualified immunity (Docket No. 51, Defs. Atty. Affirm. ¶ 9).  Accepting, as stated above, that the defendant officers at the scene acted properly, their supervisor, former Commissioner Diina also enjoys qualified immunity.  Therefore, as to defendant Diina, this action should be **dismissed** on qualified immunity grounds.

## CONCLUSION

Based upon the above, it is recommended that defendants' motions for summary judgment (Docket Nos. 34, 50) be **granted**.

17

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

18

SO ORDERED.

_____/s/ Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
April 9, 2007